CHATHAM,
July, 1832.

BANK of GEORGIA
*v.*
The MAYOR
and ALDERMEN
of SAVANNAH.

IN CHATHAM SUPERIOR COURT, JULY, 1832.

The BANK of the STATE of GEORGIA *vs.* The MAYOR and ALDERMEN of the CITY of SAVANNAH.

*Certiorari.*

No *special* power of taxing banks in their corporate capacity has been given to the Mayor and Aldermen of Savannah by the act of 1825, and no such power can be implied from the general taxing powers conferred by that act.

The city may tax bank stock in the hands of the holders, living in the city, for it is personal property and liable to tax under the act above referred to.

The general powers to tax conferred on towns and cities ought not to be so construed as to subject the property of a corporation to be twice taxed: unless by express words of a statute or necessary implication.

THE object of the present proceeding is to test the validity of an ordinance of the Corporation of Savannah, laying a tax upon Bank Stock, passed 21st Feb. 1832.

The ordinance directs, that there shall be annually levied and paid into the city treasury a tax of thirty-one and a quarter cents on every one hundred dollars of bank stock, operated upon or employed within the city of Savannah. For the assessment and collection of the same, it is made the duty of the president and directors of each and every bank located in the city and incorporated by the legislature, and in whose charter there is no special exemption from city taxation, to cause its cashier to transmit to the treasurer of the city, on or before a specified day in each year, a return sworn to by him, in which shall be stated the amount of capital stock actually paid in, and the amount of value of capital stock in each and every bank used, operated or employed, in Savannah on a specified day, preceding such return. It points out the time when the tax is to be paid, and on the neglect or refusal to make the return, or pay the tax, the city treasurer is required to issue an execution against the president and directors of each bank so neglecting or refusing, for an amount equal to thirty one and a quarter cents on every hundred dollars of the capital stock actually subscribed for each bank. It is objected against the validity of this ordinance, that by no act of the legislature, incorporating the city of Savannah has the *special* power of taxing the banks, in their corporate character on account of their stock, been conferred, and that such right cannot be implied from the *general* taxing powers bestowed upon the city, for several reasons, which the court will proceed to state and consider. The right in the city, to impose this tax in the shape in which it appears, if it exist at all, must be derived from the 7th sec. of the act of 1825. The act of 1787, authorized a tax only upon lots of ground or buildings within the city. In respect of these, persons occupying or inhabiting them, were liable to be taxed. The act of 1805, authorizes the city to raise and establish a regular watch, and for which special purpose, the power is conferred to impose assessments and levy an annual tax on all persons and property within the city liable to taxation, by the general tax laws. It cannot be pretended that the ordinance in question is sustained by either of these acts. It is not within the limitation of the thing to

CHATHAM,
July, 1832.

BANK of GEOR-
GIA
v.
The MAYOR
and ALDERMEN
of SAVANNAH.

be taxed, under the act of '87, nor within that of the purpose and object of the tax under the act of 1805. The ordinance itself declares the tax to be for other and different purposes. By the 7th sec. of the act of 1825, it is enacted, "that the said mayor and aldermen are authorized to raise, by poll tax, upon all such persons as reside within the corporate limits of Savannah, or by tax and assessment upon all real and personal estate within the corporate limits aforesaid, any such sum or sums, &c. necessary for the use and good government of said city, &c."

The objection urged is, that the bank stock is neither real or personal estate within the meaning of that term in the act of 1825. The term estate, technically understood, is the interest which a man has in his property—ordinarily it denotes property, is synonymous in meaning, and embraces whatever may be property, and strictly considered as property. The case of the Portland Bank v. Althorp decided by the Supreme Court of Massachusetts, has been cited in support of this objection. That case arose upon the words of the Constitution of Massachusetts authorizing the legislature to levy *proportionate* assessments, &c. upon *estates* lying, &c. It is affirmed by the court, that the taxes authorized must be *proportional* upon *all*; and consequently, that this provision would be violated by selecting for taxation any individual or company, or specific article to be assessed by themselves. The second clause of the same constitution, authorizes the legislature to impose and levy reasonable duties and excises upon any produce, goods, wares, and merchandize, and commodities brought into, produced, &c. The court held that the tax on the bank is authorized, under the term *commodity*. They say there are other sources of emolument and profit not strictly called property, but which are rather to be considered as the means of acquiring property, which may be taxed. Such are attornies, barristers at law, vendue masters, tavern keepers and retailers, brokers, factors and commission merchants, and in the same light that court seemed to consider a tax imposed upon a company of individuals incorporated for banking purposes—that is as a tax for the privilege of banking. To us it appears that bank stock in the hands of the share holders, is to be considered as property, and as constituting a part of a man's estate. It is an investment of a sum of money from which an income is derived, and the evidence of the existence of, and proprietary interest in which, is the scrip in the hands of the holders. In the case of Ellis v. The Proprietors of the Essex Merrimack bridge, the question was, whether under the act of 1783 of Massachusetts, prescribing the powers and duties of guardians, a guardian could sell stock in a bridge corporation. The act speaks always of the real and personal *estate* of the ward—the word used throughout the act, is *estate*. The court, after affirming the

CHATHAM,
July, 1832.

BANK of GEOR-
GIA
v.
The MAYOR
and ALDERMEN
of SAVANNAH.

right of the guardian to sell the personal estate of his ward under this act, proceed to say, we do not see any reasonable ground of exception in favor of the species of property transferred by the guardian in this case. If bank stock, insurance stock, stock in the public funds could be disposed of by guardians, shares in a bridge corporation might. And that all this kind of property was considered to be under the control and at the disposal of the guardian under the general act, admits of no doubt. It is obvious, therefore, that Ch. J. Parker, by whom the opinion was delivered in the case of the Portland Bank, did consider, in this case, bank stock as the personal estate of the stockholder. In various other cases, bank stock is spoken of and treated as the private property of the stock-holder. Viewed in this light it is perfectly plain that the city has a right to tax all the stock held or owned in the city. It is a tax on the person in respect of his property. But this is a tax imposed directly on the institution, and not on the stockholders. It is important to inquire, whether this is to be considered, in the shape in which it is laid, as a tax upon property; or, upon the franchise, the operations or business of the bank. The capital stock of the bank is a fund deposited for payment of its debts, upon the pledged faith and security of which, it discounts and circulates its notes. To this purpose as specified in the charter, can it alone be applied by the corporation. In it the stockholders have an interest, individual and personal, and represented by their respective shares. The creditors of the bank, its bill holders, may acquire an equity in this form for payment of their debts superior to the stockholders, but the title of the stockholder subject to this equity, is a perfect one. Now, this tax must be considered either as a tax imposed upon the franchise, the privilege of banking, upon the operations of the bank; or, it is a tax upon property, upon this fund, or private property thus employed in the manner described in the business of banking. It has already been stated that the shares in the stock of the bank are liable to be taxed in the hands of the stockholders, they constitute a part of the personal estate of the holder, and are manifestly, therefore, included under the general expressions in the 7th sec. of the act. It is a principle of common justice that the same property should not be twice burdened for the same tax; and consequently, in construing *general* powers bestowed on towns and cities to impose taxes, a construction ought not to be given which would subject the property of a corporation to be twice taxed. This principle was distinctly affirmed and acted on by the Supreme Court of Massachusetts, in the case of the Salem Iron Factory v. Inhabitants of Danvers, 10 Mass. Rep. 514, and again recognized in the case of the Amesbury Woollen and Cotton Manufacturing Company, in 17 Mass. Rep. 461. In the former case, the court say, we should not

adopt any construction of the law, which would subject the same property to be twice charged for the same tax, unless required by the express words of a statute, or by necessary implication. In applying this principle to the present case, we can adopt the language of the court in that. There is no such necessity existing here. The stockholders are liable to be taxed for their shares—it is a part of their personal property or estate, and there is nothing in the law which necessarily renders the bank as a corporation, subject to the taxes for the money or stock, which constitutes those shares, and which is deposited simply as a security against the responsibilities which may be incurred in conducting its business.

The ordinance in this case directs, upon a failure to make return by the bank, execution to issue for so much per cent. upon the entire capital subscribed for.—This ordinance is a transcript of the act of the legislature of 1817, imposing a tax on banks. There is a material difference between the effects of this provision in the act of the Legislature, where the State imposes a general tax which is laid and confined to the principal bank, and the ordinance of the city, by which the principal bank is taxed for the whole amount of its capital stock, when each of the branches may be subjected to taxation in the town or city where it may be located. It is not attempted to be supported as a penalty upon the bank for refusing to make the return, but it is said to be an alternative from which the bank may relieve itself by making the return. It belongs, however, to the court to consider the effect of this branch of the ordinance, as it is attempted to be enforced—and the necessary consequence of a tax imposed upon the entire capital in Savannah, is to subject so much of that capital as is used by the branches to be twice taxed.

The bank, like an individual, is liable to be taxed for the real estate held in the corporate name, and is also liable to be taxed for shares of its own stock held and owned by the corporation. It does, in fact, pay a tax upon its real estate lying within the city. The enforcement of the ordinance in its present shape is to tax the real estate as real estate, and also to tax it as a part of the capital stock of the bank. These objections are limited to so much of this ordinance as is attempted to be enforced, or to the course it prescribes upon the failure of the bank to make return. But there is another consideration which may not be disregarded in interpreting the general powers given to the city, and which is co-extensive with the entire ordinance. The State is a stockholder in this institution—she owns a large portion of the stock of this corporation. It is admitted that the State, by engaging in a trading company, does not confer on the company the attributes of sovereignty, but takes on herself so far as concerns the transactions of that company, the character of a private citizen. This is the principle laid down by the Su-

**134**

CHATHAM,
July, 1832.

BANK of GEORGIA
v.
The MAYOR
and ALDERMEN
of SAVANNAH.

preme Court of the United States, in the case of the Planters' Bank, cited in the argument in this. The connexion with the State does not exempt the company from liability to suit—her interest in the trust fund is equally pledged for the payment of debts. Still the interest of each stockholder is separate and distinct, although a common fund for certain purposes. The interest of each is capable of being transferred and sold—it may be levied on under execution as the property of the proprietor, and each holder, in respect of his interest is liable to the burden of taxation.

The sovereign cannot be taxed—she cannot tax herself, nor permit a subordinate authority to tax her. The State, then, considered as a share holder, could not be taxed in respect of her interest or shares in this bank. But by laying the tax on the institution, or corporate stock in the hands of the corporation which constitute those shares, the city is enabled indirectly to burden the property and diminish the profits of the State, which directly could not be done. Ought such a construction to be placed upon the general powers of the city as would produce such a result. ? It cannot be supposed for a moment, that the State ever intended to confer upon a subordinate authority the right to tax its property and means ; and such a decision by this court would no doubt be followed by immediate legislation upon the subject.

It is also contended, that such a construction as would support the right claimed by the city, ought not to be given to the 7th section of the act of 1825, because the exercise of this right by the city, would enable it to destroy the bank. This point presents itself with stronger claims upon the consideration of the court, because of an adjudication heretofore made upon it in the State and which will be referred to.

The State must be presumed to retain the power to maintain and preserve an institution which she has authorized to exist. The incorporation of the bank and conferring upon it privileges, lays the State under an obligation to maintain and preserve that existence. The exercise of a right or power by a subordinate authority, which endangers such existence, ought to be held repugnant to the laws of the State conferring the charter. In giving construction to an act of the legislature, investing the corporation of Savannah with *general powers* to raise revenue for city purposes, it ought to be so construed as to avoid this repugnancy. In the case of M'Cullock, the following propositions are laid down by the Supreme Court of the United States. 1st. That a power to create, implies a power to preserve. 2d. That a power to destroy, if wielded by a different hand, is hostile to, and incompatible with, the powers to create and preserve. 3d. That when this repugnancy exists, the authority which is supreme must control. In that case the question was between

CHATHAM,
July, 1832.

BANK of GEOR-
GIA
v.
The MAYOR
and ALDERMEN
of SAVANNAH.

the General and State Governments, and the force of the argument consisted in the inability of the national government to control the legislation of the State, if the right to tax the bank were once conceded. Let us see how the principles stated apply to the present case.

May the power of taxing by the city endanger the existence of the bank? The Corporation of the city of Savannah is a political corporation instituted for the purpose of city government. Over such corporations, the State possesses a controlling power; she may restrain the legislation of the city, repeal its ordinances and interpose whenever the city should abuse the power of taxation. It is nevertheless true, if the right be conceded to the city, that it at present exists without limitation; and that, if she may impose the present tax, she may impose a tax of 100 per cent. The consequence would be immediate ruin to the institution. The legislature might repeal the ordinance and prevent its future operation, but rights already accrued to the city, would be vested. But this is an extreme case, and one which will probably never occur. The question for the court is, not what use *will* be made of this power by the city, but what *may* be made. It may be asked, is not this the necessary consequence of the taxing power? It is necessarily so, as far as it is exercised by the sovereign power. The responsibility of the legislature to its constituents, forms the only protection against excessive taxation—and in the exercise of the taxing power by a subordinate authority, upon persons and property generally, the same protection may be realized. But where a specific thing is selected, or an institution of this sort, for taxation, and a special tax is imposed, the question assumes a different aspect. In the imposition of a general tax, the taxing power is responsible to its constituents, and are moreover interested personally in the measure of the tax—because each member of the taxing power is liable to the practical operation of the tax upon himself. To this responsibility and personal interest, their constituents look for protection from excessive taxation. It is not so when a specific tax is laid upon a single object, which in proportion to the magnitude of *its* tax diminishes the burden upon the community at large. Upon this subject we have the decision of the late Judge Dooly, a gentleman whose talents were highly appreciated on the bench. It was made in the county of Wilkes, in the year 1819, in the case of the Branch Bank *v.* the Town of Washington. It affirms the position, that the commissioners of the town of Washington have no right to impose a tax upon the Branch Bank in that town, as such right may, in its exercise, repeal the act incorporating the bank of the State of Georgia. The certiorari in that case was consequently sustained, and the proceedings of the town set aside. We limit the operation of this principle, and the argument predicated upon it to what we conceive to

CHATHAM,
July, 1832.

BANK of GEOR-
GIA
v.
The MAYOR
and ALDERMEN
of SAVANNAH.

be its legitimate effect, viz.: That it would require a clear manifestation and expression of the legislative will, to concede the existence of a right capable of such consequences in its exercise.

But can this be considered a tax on the stock or property? It is as this court apprehends, a tax upon the privilege of the bank in using the money invested in its stock for banking purposes,—it is a tax upon the operations of the bank, upon the franchise. The reference had to the stock in the ordinance is as the mere means and measure by which the assessment shall be made. How does it differ in principle from a tax requiring a stipulated sum to be paid annually by the bank? How shall that sum be assessed? The taxing power must resort to some measure, standard, or rule, and this is entirely arbitrary. It may be so much for every hundred or thousand dollars of the capital subscribed or paid in, or it may be a specified sum upon the entire capital. It is in either shape a tax upon the bank, and those are the different modes in which it may be estimated or assessed. A tax thus imposed, operates indirectly, it is true, upon the capital, it diminishes profits, and if sufficiently extended, may encroach upon the capital itself. It is still a tax upon the franchise. In the case of the Portland Bank, the State directed that every bank should pay to the Treasurer of the Commonwealth, a tax one half of one per cent on the amount of the original stock of said banks actually paid in. We have already seen the light in which this tax was viewed—it was clearly considered by the Supreme Court of Massachusetts, as a tax upon the privilege of the bank, upon its business. The act of the State of Maryland, upon which the case of M'Cullock arose, required the notes of the bank to be issued upon stamp-paper; for which the bank should pay a certain sum, and from which it might relieve itself by the annual payment of a specified tax. This is expressly declared by the Supreme Court of the United States to be a tax on the operations of the bank. Now the question is not whether banking institutions or the privilege or business of banking, are legitimate subjects of taxation; nor whether the legislature (upon whom in this respect the Constitution of this State has imposed no limitation) may tax them, or transfer the power to do so to a subordinate authority; but whether this power has in fact been conferred? Not whether the bank claims exemption from any burden which the city ever had a right to impose, but whether such right ever existed. If the power be conceded in this case, then the city has the right to tax every species of business carried on by individuals, since there is nothing in the nature of an incorporation, which would render it liable, when an individual carrying on the same business would be exempt. Subsequently to the act of 1805, the city has imposed a tax on professions and various kinds of business, but all those ordi-

nances are passed for the specific purpose of maintaining a watch, under the powers derived by the act of 1805, and so expressly declared to be in all the ordinances. In 1817, all the taxes of the city were increased 25 per cent, for the purpose of the Dry Culture Contract. This increased tax, the court has always understood was imposed at the instance of the citizens of Savannah, and has been silently acquiesced in. Neither of these, therefore, can furnish any assistance in interpreting the act of 1825. The regulation of taverns, and granting licenses—taxing and licensing vendue-masters,—taxing pedlers and persons vending goods, wares and merchandize in the city, are powers distinctly conferred by other sections of the act of 1825, and not claimed under the general powers granted in the seventh section ; but this would not have been necessary, if the legislature had supposed these powers embraced in the 7th section. Several previous laws also gave the power to tax and license auctioneers. Every man's private business, pursuit or calling, are things in which he has an interest, and many species of employments are legitimate subjects of taxation, and are taxed—still they are not, strictly speaking, property ; they are the means from which income is derived, property made,—but there is a clear distinction between the employment and the income or profits. Franchises are incorporeal hereditaments. From the exercise of the business authorized, and the privileges conferred, income is derived ; but the money produced is not to be confounded with the operations from which it is derived. The present is not a tax upon the income, but upon the operations of the bank. It exists and is assessed without regard to the income. Franchises, from the vested interest which the corporators take under the legislative grant, have been denominated a species of *legal* estate. So from the nature of the interest which a man may have in his office or profession, it is considered as his freehold. In the absence of an express grant, there is an implied permission of the government, to carry on any lawful business or employment, and whether by express grant or implied permission, the right, whilst permitted to be exercised, is the same, and derived from the same source. There is nothing in the nature of an express grant that would subject the grantee to burdens which individuals pursuing similar occupations, by implied permission, would be exempt from. We apprehend it cannot be pretended, that under a general power to tax real and personal estate, the city acquired a right to tax offices, professions, and employments of every description, and it was not the legislative understanding, as is manifest from the special authority given in the same act to tax particular occupations. The distinction, the court thinks, is clear and sound between what may be properly and strictly considered property, and rights and interests which are only the sources of emolument and profits, and from which pro-

18

CHATHAM,
July, 1832.

BANK of GEORGIA
*v.*
The MAYOR
and ALDERMEN
of SAVANNAH.

<div style="margin-note">
CHATHAM,
July, 1832.

BANK of GEORGIA
v.
The MAYOR
and ALDERMEN
of SAVANNAH.
</div>

perty may be derived. So far then as this tax may be viewed in the light of a tax upon the franchise, the operations of the bank, and this is the true light in which the court thinks it ought to be considered, we are satisfied, that the city is unauthorized to impose it by any power conferred on it by the legislature in the act of 1825.

An argument was advanced in this case in favor of the city, drawn from the exemption contained in the charter of the Planters' Bank, from city taxation. But confessedly, when that charter was granted, no general right existed in the city to tax the bank for *general* purposes. If any such power existed, it was under the act of 1805, for a specific purpose, viz.: to raise and support a city watch—and admitting for the sake of the argument, what is not necessary to be decided here, that such a power does exist under the act of 1805, the inference to be deduced from the exemption of the Planters' Bank, could only extend to the liability of the other banks, to the imposition of a tax under an existing power in the city. The liability or exemption of the bank, whose charter contained no such provisions, to taxation under a subsequent authority conferred upon the city, must depend upon the terms of that authority—the question being confined to the legislative intent and will, not extending to an inquiry into its powers.

Believing that the mayor and aldermen of the city of Savannah are not authorized by any act of the legislature to pass the ordinance in question, imposing this tax, it is ordered that the certiorari be sustained, and the proceedings below be set aside.